IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: _____

THOMAS L. MCLALLEN III,

    Plaintiff,

v.

PUEBLO COUNTY SHERIFF'S DEPARTMENT; SHERIFF KIRK M. TAYLOR, in his official and individual capacity; UNDERSHERIFF J.R. HALL, in his official and individual capacity; CAPTAIN LEIDE DEFUSCO, in his official and individual capacity; INSPECTOR TOM PROUD, in his official and individual capacity; BUREAU CHIEF DARLENE ALCALA, in her official and individual capacity; LIEUTENANT DON LEACH, in his official and individual capacity; and SERGEANT LEROY MORA, in his individual and official capacity.

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, Thomas L. McLallen III (hereinafter "Sergeant McLallen" or "McLallen"), by and through his undersigned attorney, brings this action and alleges as follows:

### INTRODUCTION

1.    This is an action for damages against the Pueblo County Sherriff's Department (hereinafter "the Department") and Sheriff Kirk M. Taylor (hereinafter "Sheriff Taylor" or "Taylor"), Undersheriff J.R. Hall (hereinafter "Undersheriff Hall" or "Hall"), Captain Leide DeFusco (hereinafter "Captain DeFusco" or "DeFusco"), Inspector Tom Proud (hereinafter "Inspector Proud" or "Proud"), Bureau Chief Darlene Alcala (hereinafter "Bureau Chief Alcala" or "Alcala"), Lieutenant Don Leach (hereinafter "Lieutenant Leach" or "Leach"), and Sergeant Leroy Mora (hereinafter "Sergeant Mora" or "Mora") (collectively "Defendants"), for violating Sergeant McLallen's rights under the

First Amendment of the Constitution, the Fourteenth Amendment of the Constitution, and for retaliating against him in contravention of §8-2.5-101, C.R.S., as such conduct is clearly against public policy.  Sergeant McLallen alleges that Defendants violated his First and Fourteenth Amendment Rights when they retaliated against him by terminating his employment as a result of his testimony before the Colorado General Assembly and for his advocacy of collective bargaining as President of the Fraternal Order of Police, Lodge 7.  The conduct of the Defendants in terminating Sergeant McLallen for political purposes runs contrary to both public policy and Colorado law, as §8-2.5-101 C.R.S. allows an individual to freely voice his opinion to a committee of the General Assembly on matters of public concern.   Defendants' conduct under color of state law proximately caused the deprivation of Sergeant McLallen's federally protected rights and those provided to him under state law.

2.     Sergeant McLallen brings this action under 42 U.S.C. § 1983 for violation of his civil rights and seeks compensatory damages and punitive damages against the Department as well as Sheriff Taylor, Undersheriff Hall, Captain DeFusco, Inspector Proud, Bureau Chief Alcala, Lieutenant Leach, and Sergeant Mora, in both their individual and official capacities.  Sergeant McLallen also makes claims against the Defendants for violation of public policy clearly established within the State of Colorado for terminating his employment in contravention of C.R.S. § 8-2.5.101.

## JURISDICTION & VENUE

3.     This action arises under the Constitution and laws of the United States and 42 U.S.C. §1983.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.  Jurisdiction supporting Sergeant McLallen's claim for attorney's fees is

conferred by 42 U.S.C. § 1988.

4.  Venue in the United States District Court is proper in that the action complained of took place in the State of Colorado, Pueblo County, and all the parties, upon information and belief, are residents of the state.

## PARTIES

5.  At all pertinent times mentioned herein, Sergeant McLallen, was and is a citizen of the United States of America and a resident of Colorado.

6.  The Pueblo County Sheriff's Department is an independent agency of Pueblo County in the State of Colorado.

7.  At all pertinent times mentioned herein, the individual Sheriff Taylor, in his official and individual capacities, was the duly elected Sheriff of the Pueblo County Sheriff's Office. At the time of Sergeant McLallen's improper termination, Sheriff Taylor served as the final decision maker.

8.  At all pertinent times mentioned herein, the individuals Undersheriff Hall, Captain DeFusco, Inspector Proud, Bureau Chief Alcala, Lieutenant Leach, and Sergeant Mora, in their official and individual capacities, served as members of Sergeant McLallen's chain of command or were involved in the investigation that ultimately resulted in the Plaintiff's termination. At the time of Sergeant McLallen's improper termination, these individuals were all employed with the Pueblo County Sheriff's Department.

## FACTUAL ALLEGATIONS

9.  Sergeant McLallen was employed by the Pueblo County Sheriff's Department for almost 10 years, and was a Sergeant from 2006 to 2009. Sergeant

3

McLallen worked as an acting Sergeant beginning in May 2005, receiving all the pay and benefits associated with the position. After working as an acting Sergeant for a year, Sergeant McLallen was officially promoted to Sergeant, receiving his stripes in May 2006. During his tenure with the Department, Sergeant McLallen received either "meets expectations" or "exceeds expectations" on all of his evaluations. Further, the only discipline he received while with the Department, prior to 2009, was verbal or written reprimands.

10. McLallen was terminated from the Department on June 25, 2009 for purported performance and conduct issues related to incidents that occurred off-duty and outside the course and scope of his employment as a Sergeant with the Department. The termination, disciplinary hearings, and Internal Affairs investigation were headed up and zealously pursued by Sheriff Taylor through his subordinates Undersheriff Hall, Captain DeFusco, Inspector Proud, Ms. Alcala, Lieutenant Leach, and Sergeant Mora.

11. The background of events leading up to Sergeant McLallen's termination is informative as to the reasons for Sergeant McLallen's wrongful termination and related violations of his civil rights. As will be seen, Sergeant McLallen's termination was politically motivated, was based on allegations of misconduct that are unfounded, was done in violation of Sergeant McLallen's rights as a public employee and was a retaliatory act for Sergeant McLallen's involvement in the Fraternal Order of Police, specifically as President of his local lodge: Pueblo County Fraternal Order of Police Lodge #7(hereinafter "F.O.P. Lodge #7"). There was insufficient evidence to justify the employment action, and Sergeant McLallen was not afforded adequate due process

during the termination process. Also, it has been made known that administrators acting under the direction of the Sheriff engaged in acts of official misconduct by bullying, threatening and bribing potential witnesses to give false statements against Sergeant McLallen in the course of the internal investigation that was conducted by the Pueblo County Sheriff's Department.

12. The termination of Sergeant McLallen by the Pueblo County Sheriff's Department was direct retaliation to F.O.P. Lodge #7's attempts to obtain collective bargaining and better working conditions for Pueblo County Sheriff Office deputies.

13. In July of 2007, F.O.P. Lodge #7 was chartered. The goal of F.O.P. Lodge #7 from its inception was to work with Sheriff Taylor to establish better working conditions for its members.

14. Sergeant McLallen was the duly elected President of F.O.P. Lodge #7 at its inception. Sergeant McLallen acted in this capacity to promote the will of the membership of the lodge by advocating through lawful and legal means the members' desire to obtain collective bargaining. As President, Sergeant McLallen also became the public face of F.O.P Lodge #7, receiving publicity from local print and television media regarding the organization's goals and objectives.

15. In February of 2008, a vote was taken by the members of F.O.P. Lodge #7 to establish collective bargaining rights within the Department through legal channels. F.O.P. Lodge #7 kept Sheriff Taylor informed of the members' directive and its leadership was immediately met with hostility.

16. Sheriff Taylor expressed that he was concerned about the publicity F.O.P. Lodge #7 was receiving, specifically about the fact that they were conducting press

conferences without his approval. He also expressed concern that F.O.P. Lodge #7 was in discussions with the Pueblo County Commissioners without his approval.

17. During this same time period, in early spring 2008, Undersheriff Hall made several comments to Sergeant McLallen about the fact that "the boss," Sheriff Taylor, did not see eye-to-eye with F.O.P. Lodge #7. During this meeting with Undersheriff Hall, Sergeant McLallen was put on notice that his actions and those of F.O.P. Lodge #7 were considered adverse and hostile to Sheriff Taylor. Moreover, the tone and body language of Undersheriff Hall were of such a nature that Sergeant McLallen sought to relinquish some of his responsibilities as the public face of F.O.P. Lodge #7 out of fear of retaliation. Sergeant McLallen's concerns about suffering an adverse employment action were communicated to Mike Violette (hereinafter "Violette"), Executive Director of the Colorado Fraternal Order of Police. Based on those concerns, Violette took more responsibilities for handling publicity for F.O.P. Lodge #7.

18. F.O.P. Lodge #7 began drafting a referendum that would establish collective bargaining rights for Pueblo County Sheriff Department employees. Sheriff Taylor was invited to assist with this effort, but declined. In the spring of 2008, F.O.P. Lodge #7 believed that two of the three Pueblo County Commissioners would support their efforts to obtain collective bargaining.

19. In May of 2008, F.O.P. Lodge #7 presented a final draft of the proposal seeking collective bargaining rights for Pueblo County Sheriff Department employees to the Pueblo County Commissioners. Sgt. McLallen gave the opening remarks on behalf of F.O.P. Lodge #7 before the Pueblo County Commissioners and Department officials that were in attendance. Sheriff Taylor spoke at the conclusion of the meeting and

stated his beliefs that collective bargaining could not be forced upon him. He further stated that if such a referendum passed, he would simply not honor it based on his belief that he is an independent elected official who is solely tasked with setting wages within the Department.

20. The measure ultimately failed to get the support of the Pueblo County Commissioners, and F.O.P. Lodge #7 was notified of the Commissioners' decision in late July, 2008.

21. During the May 2008 proposal, Pueblo County Commissioner John Cordova was serving as an interim Commissioner. Prior to the meeting, he had expressed support for the efforts of F.O.P. Lodge #7. Shortly after F.O.P. Lodge #7 was alerted that their measure failed, it was announced that Sheriff Taylor endorsed John Cordova in his bid for a permanent seat with the Pueblo County Commissioners.

22. F.O.P. Lodge #7 subsequently endorsed John Cordova's political opponent for the County Commissioner seat. Sheriff Taylor and the command staff of the Pueblo County Sheriff's Department began to target Sergeant McLallen due to his role as the duly elected president of F.O.P. Lodge #7 and expressed displeasure with the fact the F.O.P. Lodge #7 had gone against him and endorsed another candidate, to his embarrassment.

23. In late Summer 2008, Sheriff Taylor appeared before the South Central Labor Council meeting; a meeting composed of AFL-CIO members and invited guests, to speak regarding his support for organized labor. Instead, Sheriff Taylor harshly criticized F.O.P. leadership and made disparaging remarks about their efforts to obtain collective bargaining. Mike Violette aggressively responded to Sheriff Taylor's critique

7

and noted that his conduct demonstrated an anti-union animus since F.O.P. Lodge #7 was chartered.

24.     Shortly thereafter, Sheriff Taylor began to demonstrate open animosity and hostility towards Sergeant McLallen and F.O.P. Lodge #7's attempts to obtain collective bargaining and better working conditions for deputy sheriffs within the Department. Sheriff Taylor went so far as to author a letter which directly violated the constitutional rights of deputy sheriffs in his Department. (*See* September 22, 2008 letter, attached hereto as Exhibit "1"). While the letter was addressed to Sergeant McLallen, it was distributed to all members of the Department at their annual retreat on September 23, 2008. As the letter was distributed, Sheriff Taylor made public remarks disparaging the F.O.P and stating that the executive board had gone rogue and it was obvious that they could not work together.   From this letter, Sergeant McLallen knew he was being targeted by Sheriff Taylor and felt his job was in jeopardy for his leadership role within F.O.P Lodge #7.

25.     During the time frame of January, 2008 through November, 2008, attendance at F.O.P Lodge #7 meetings started to decline due to intimidation by command staff at the Department during F.O.P. Lodge #7 meetings. Internal Affairs investigators from the Department were present at the meetings recording who was in attendance. In addition, Commanders from the Department would drive around the parking lot of the F.O.P. Lodge #7 meeting location and record license plate numbers of those at the meeting. Members of F.O.P. Lodge #7 felt intimidated and were fearful of the retaliation that may endure due to their attendance. This chilling effect prohibited members of F.O.P. Lodge #7 from attending a Labor Council meeting in Pueblo in July,

8

2008 out of fear of being fired.

26.  The termination of Sergeant McLallen was initiated after Sergeant McLallen testified before the State General Assembly on behalf of the Fraternal Order of Police and F.O.P. Lodge #7 for a bill that would have granted peace officers within the State of Colorado collective bargaining rights. The testimony of Sergeant McLallen was before a committee of the General Assembly who was reviewing the proposed bill. This testimony occurred in the early months of 2009.

27.  The day after Sergeant McLallen's testimony, Sheriff Taylor directly confronted and intimidated Sergeant McLallen in the Department parking lot as a result of his testimony to the committee. Undersheriff Hall accompanied Sheriff Taylor in the confrontation. Sheriff Taylor specifically told Sergeant McLallen that he did not appreciate being blind-sided by his testimony and that his colleagues were also disturbed by the Sergeant's testimony. Undersheriff Hall added sarcastically that Sergeant McLallen "was doing a great job." Sergeant McLallen again felt that his fears were being realized and his position within the Department was in jeopardy.

28.  These blatant acts of retaliation culminated in the official termination of Sergeant McLallen on June 25, 2009. Sergeant McLallen was purportedly terminated for an off-duty incident wherein Sergeant McLallen merely witnessed a skirmish between employees who work for the Sheriff's Department on May 2, 2009. During this incident, Sergeant McLallen broke up the altercation between two employees of the Sheriff's Department, rendered aide to a Department employee who was injured during the altercation, took the victim to the hospital and tried to persuade the victim to press charges in the matter.

29. The deputy that was actually involved in the physical altercation that Sergeant McLallen witnessed received only a fifteen (15) day suspension.

30. Sergeant McLallen was also purportedly accused by an unidentified citizen of confronting a former inmate while off-duty and treating him in a disrespectful manner. Despite the unsubstantiated allegations from the unidentified citizen, the Department concluded that the Sergeant McLallen confronted the former inmate and attempted to provoke a fight with him.

31. The termination of Sergeant McLallen by the Pueblo County Sheriff's Office was an act intended to eradicate the F.O.P. as a representative organization so chosen by the employees of the Pueblo County Sheriff's Department.

32. The efforts by Sergeant McLallen to obtain collective bargaining for the F.O.P. Lodge #7 members, as well as law enforcement officers across Colorado, resulted in his termination by Sheriff Taylor in a designed attempt by the Pueblo County Sheriff's Department to silence all efforts by F.O.P. Lodge #7 to gain collective bargaining rights.

33. The termination of Sergeant McLallen was intended to create a chilling effect on the membership of F.O.P. Lodge #7 and send a clear message to the members of F.O.P. Lodge #7 as to what will happen to any member of the Lodge who may advocate a lawful position that is in opposition to Sheriff Taylor.

34. The Pueblo County Sheriff's Department and Sheriff Taylor, individually, wrongfully terminated Sergeant McLallen without providing him his constitutionally mandated due process rights.

35. The termination of Sergeant McLallen supports a cognizable employment

action because it contravened a clear mandate of public policy. See *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100,107 (Colo. 1992) (supporting such a claim where "the employee's performance of an act that public policy would encourage under circumstances where retaliatory discharge is supported by evidence of employer's bad faith, malice, or retaliation").

### FIRST CAUSE OF ACTION – 42 U.S.C. §1983 FIRST AMENDMENT VIOLATION – RETALIATORY TERMINATION

36.     Sergeant McLallen hereby incorporates by reference all averments in this Complaint.

37.     In serving as President of F.O.P. Lodge #7 and testifying before the Colorado General Assembly, Sergeant McLallen was advocating on behalf of the lodge members, engaging in such activity is protected by the First Amendment to the U.S. Constitution.

38.     The Defendants' acts of intimidating, threatening, and unlawfully terminating Sergeant McLallen's employment were motivated by Sergeant McLallen's exercise of constitutionally protected conduct.

39.     The Defendants' overtly and implicitly made intimidating and threatening statements to Sergeant McLallen due to Sergeant McLallen's exercise of his constitutionally protected conduct.

40.     Moreover, the Defendants made overtly and implicitly defamatory comments about Sergeant McLallen to others, under circumstances implying that some punishment, sanction or adverse action would imminently follow.

41.     Additionally, Sergeant McLallen's advocacy on behalf of lodge members is

"political speech" that involves a matter of public concern.

42. Sergeant McLallen's interest in expressing the views of F.O.P. Lodge 7 membership outweighs the Defendants' interest in regulating that political speech.

43. Sergeant McLallen's expression of his political speech was the primary factor driving Defendants' decision to terminate the Sergeant.

44. Defendants clearly would not have taken the same employment action of terminating Sergeant McLallen if the Sergeant had not advocated on behalf of the lodge members.

45. Defendants' actions caused Sergeant McLallen to suffer injuries that would chill a person of ordinary firmness from continuing to engage in such constitutionally protected activity.

46. Defendants' conduct violated clearly established rights belonging to Sergeant McLallen of which reasonable persons in Defendants' position knew or should have known.

47. Defendants' acts were done under color of state law.

48. Defendants engaged in the conduct described by this Complaint intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Sergeant McLallen's federally protected constitutional rights.

49. Defendants' conduct proximately caused significant injuries, damages and losses to Sergeant McLallen.

### SECOND CAUSE OF ACTION – 42 U.S.C. §1983 FOURTEENTH AMENDMENT VIOLATION – DENIAL OF DUE PROCESS

50. Sergeant McLallen hereby incorporates by reference all averments in this Complaint.

51.   As a public employee, Sergeant McLallen has a constitutionally protected property and/or liberty interest arising from each term, actual or implied, of his employment or other contracts with the Pueblo County Sheriff's Department, as set forth in, or evidenced by, the parties' acts and words, the rules and policies of the Pueblo County Sheriff's Department, and its policies and procedures.

52.   The Defendants established policies and procedures in connection with their termination of the Sergeant McLallen, which were more stringent against Sergeant McLallen than due process would otherwise require.

53.   Defendants deprived Sergeant McLallen of his property arbitrarily, so as to offend notions of fairness and due process in violation of the Colorado Constitution and U.S. Constitution.

54.   Defendants' investigation into allegations of wrongdoing on May 2, 2009 was intentionally, and without justification, focused on Sergeant McLallen to the detriment of a fair and impartial investigation.

55.   This biased investigation caused Sergeant McLallen to suffer injuries and damage to his reputation in an amount that will be proven at trial.

56.   Defendants' conduct proximately caused significant injuries, damages and losses to Sergeant McLallen.

### THIRD CAUSE OF ACTION – VIOLATION OF PUBLIC POLICY

57.   Sergeant McLallen hereby incorporates by reference all averments in this Complaint.

58.   The termination of Sergeant McLallen supports a cognizable employment action because it contravened a clear mandate of public policy. *See Martin Marietta*

*Corp. v. Lorenz*, 823 P.2d 100, 107 (Colo. 1992) (supporting such a claim where "the employee's performance of an act that public policy would encourage under circumstances where retaliatory discharge is supported by evidence of employer's bad faith, malice, or retaliation").

59. As a direct and proximate result of such actions, Sergeant McLallen has suffered damages and losses including, but not limited to, back pay, front pay, loss of benefits, and attendant aspects of employment, loss of reputation in his professional and personal community, humiliation, mental anguish, and emotional distress.

## FOURTH CAUSE OF ACTION – VIOLATION OF C.R.S. § 8-2.5-101

60. Sergeant McLallen hereby incorporates by reference all averments in this Complaint.

61. Colorado Revised Statute Section 8-2.5-101(1)(a), states in relevant part that "[i]t is unlawful for any person…to take action against its employees…solely for, testifying before a committee of the general assembly…."

62. Colorado Revised Statute Section 8-2.5.101(1.5)(a)(I) also makes it "unlawful for any person to intimidate a legislative witness, by use of threat, in order to intentionally influence or induce a legislative witness: to give or refrain from giving testimony before a committee of the general assembly;… or to take any action against a legislative witness for testifying before a committee of the general assembly." *Id.* at C.R.S. § 8-2.5-101(1.5)(b)(I)(B) and § 8-2.5-101(b)(II).

63. Sergeant McLallen suffered intimidation for his testimony when he was confronted by Sheriff Taylor upon his return from the Colorado State Capital.

64. The intimidation experienced by Sergeant McLallen was not only directed

at Sergeant McLallen, but was also designed by Sheriff Taylor to dissuade others similarly situated from testifying before the general assembly on matters that affect a Department employee.

65. Moreover, upon information and belief, Sergeant McLallen was terminated from his employment based on his testimony to the committee of the Colorado general assembly in support of state-wide collective bargaining rights for Colorado law enforcement officers.

66. As a result the violation of C.R.S. § 8-2.5-101, the Plaintiff has been damaged in an amount to be determined at trial and in accordance with the remedies provided by statute.

WHEREFORE, Sergeant McLallen respectfully requests that this Court enter judgment in his favor and against the Defendants and grant:

(a) Appropriate declaratory and/or equitable relief;

(b) Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering allowed by law in an amount to be determined at trial;

(c) All economic losses allowed by law;

(d) Remedies as provided for pursuant to C.R.S. § 8-2.5-101(2)(a);

(e) Punitive damages allowed by law and in an amount to be determined at trial;

(f) Attorney's fees and the costs associated with this action, including those associated with having to defend against the termination case;

(g) Pre- and post-judgment interest at the lawful rate;

(h) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 21st day of May, 2010.

/s/ Donald C. Sisson
Donald C. Sisson, #35825
Nikea T. Bland, #37086
Attorneys for Plaintiff Thomas L. McLallen
ELKUS & SISSON, P.C.
1660 Lincoln Street, Suite 1750
Denver, Colorado 80264
(303)567-7981
(303)832-1188 (fax)

Plaintiff's address:
2309 South Drive
Pueblo, CO 81008