IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01187-RPM

THOMAS L. MCLALLEN III,

    Plaintiff,

v.

SHERIFF KIRK M. TAYLOR, in his official and individual capacity;
UNDERSHERIFF J.R. HALL, in his official and individual capacity;
CAPTAIN LEIDE DEFUSCO, in his official and individual capacity;
INSPECTOR TOM PROUD, in his official and individual capacity;
BUREAU CHIEF DARLENE ALCALA, in her official and individual capacity;
LIEUTENANT DON LEACH, in his official and individual capacity; and
SERGEANT LEROY MORA, in his individual and official capacity.

    Defendants.

---

### PLAINTIFF'S AFFIDAVIT IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

---

| STATE OF COLORADO | ) | |
|---|---|---|
|  | ) | ss. |
| CITY AND COUNTY OF DENVER | ) | |

The Affiant, Thomas L. McLallen III, having first been sworn on oath, duly states and declares as follows:

1. When Sheriff Taylor stated that if Lodge 7 came under the flag of collective bargaining that all bets were off the table, I viewed Sheriff Taylor's remarks as overt threats that he would use whatever means necessary to crush the FOP and the leadership, thereby making the Union ineffective.

2. After the February 4, 2008 vote, I and Lodge 7 staged a press conference announcing its existence and plans to obtain collective bargaining rights with Pueblo County, and to

1



EXHIBIT 2

have an equal voice in the workplace.

3. As President of Lodge 7, I and Lodge 7 perceived Sheriff Taylor's April 3, 2008 letter as a definitive "line drawn in the sand" and that the Sheriff would never recognize the FOP as a Union and bargaining agent.

4. As a result of Sheriff Taylor's April 3rd statement, Lodge 7 elected not to concede to the Sheriff and decided to continue to fight for collective bargaining. I with the aid of Michael Violette of the State FOP Labor Council decided to introduce a proposed county ordinance that would allow Pueblo County Sheriff Deputies to collectively bargain with the Sheriff's Office.

5. In an effort to achieve the goals of Lodge 7, I and Mr. Viollete met with County Commissioners John Cordova, Anthony Nunez and J.E. Chostner to discuss the passage of a collective bargaining ordinance. Commissioners Cordova and Chostner both indicated to me their support for a collective bargaining ordinance.

6. Shortly after the meeting with the County Commissioners, Sheriff Taylor confronted me and stated that he was upset that I and Mr. Violette went behind his back and spoke to the County Commissioners to get a collective bargaining ordinance passed. Sheriff Taylor told me that Lodge 7 was taking a course of action that the Sheriff vehemently opposed. Despite this confrontation, I did not abandon my charge to get collective bargaining.

7. On July 7, 2008, I, Mr. Violette, FOP General Counsel (David Osborne) met with the Pueblo County Commissioners to discuss the proposed ordinance as presented by the Plaintiff and Lodge 7. Also in attendance at that meeting were County Attorney Daniel C. Kogovsek, Assistant County Attorney Peter Blood, Sheriff Taylor, and Undersheriff Hall. During the presentation to the County Commissioners, Sheriff Taylor openly stated to the Commissioners and all that attended the July 7th meeting, that he did not care how many votes the Commissioners have

2

on a bargaining ordinance, he will not follow the Commissioners decisions to have collective bargaining. The only way the Sheriff will allow collective bargaining is by Federal or State mandate. While making this statement Sheriff Taylor was visibly upset and his demeanor was one of agitation. That during the presentation to the County Commissioners, Sheriff Taylor openly stated to the Commissioners and all that attended the July 7th meeting, that he did not care how many votes the Commissioners have, he will not follow the Commissioners decision to have collective bargaining. The only way the Sheriff will allow collective bargaining is by Federal or State mandate.

8. While making this statement, Sheriff Taylor was visibly upset and his demeanor was that of agitation.

9. After the July 2008 presentation to the County Commissioners, I and Lodge 7 continued to try to achieve collective bargaining by garnering political pressure from Sheriff Taylor's constituency (i.e. other labor unions). I, Lodge 7 and Mr. Violette began a campaign to inform other labor unions that despite his political platform Sheriff Taylor was not truly sympathetic or supportive of labor unions. It was mine and Mr. Violette's intent to either have Sheriff Taylor lose on a re-election bid for Sheriff or have the other labor organizations provide the needed political pressure to force Sheriff Taylor and/or County Commissioners in supporting a collective bargaining measure.

10. During the same time frame at the AFL-CIO meeting, Sheriff Taylor endorsed Mr. John Cordova for a permanent seat as County Commissioner. Being that Mr. Cordova ultimately opposed Lodge 7's collective bargaining ordinance, Lodge 7 openly gave its support to Mr. Cordova's opponent Mr. Dorothy Butcher, who strongly supported Lodge 7's position on collective bargaining. Lodge 7 actively campaigned and advertised their support for Ms. Butcher, which was directly in opposition to the endorsement given by Sheriff Taylor to Ms. Cordova. Sheriff Taylor

was again upset that I and Lodge 7 took another position that was contrary to the will of the Sheriff. Specifically, it was conveyed by the Sheriff to me that it was embarrassing that his own Deputies were not in sync with him.

11. The September, 2008 All-Hands meeting was a gathering of Pueblo County Sheriff Deputies and Command Staff to discuss matters of importance and team building with the Agency. During the All-Hands meeting, Sheriff Taylor disseminated to all that attended a letter addressed to me. Such letter, in the eyes of Lodge 7 and myself was anti-union.

12. After the September 2008 All-Hands meeting I felt more intimated and was concerned about my future with the Sheriff's Office. As such, I limited my advocacy to trying to get collective bargaining.

13. On February 16, 2009, I testified before the State General Assembly pertaining to a statewide Officer's Bill of Rights. My testimony before the General Assembly was to get statewide collective bargaining for law enforcement officers.

14. Right after my interaction with Sheriff Taylor and Undersheriff Hall, I called Mr. Violette. In my conversation with Mr. Violette I relayed the event which just transpired. I expressed to Mr. Violette that I was afraid and that I believed the Sheriff was going to fire me.

15. Subsequent to the February 16, 2009 testimony before the General Assembly, I received various disciplinary actions which I believe were brought as a means to remove me based on my efforts to get collective bargaining, unionizing Lodge 7 and because of his testimony on February 16, 2009. The first occurred only two (2) months after my February, 2009 testimony.

16. To my surprise the Birchfield matter was not finalized or resolved with a verbal warning.

17. Concerning the Tumbleweed Tavern incidents, I emphatically deny the allegations as

4

set forth in Inspector Proud's report. To that end, I was not involved in a bar fight and I did not violate any Colorado State law stemming from the May 2-3, 2009 incident.

18. Deputy Leonard Flores told me that he was charged criminally for the May 2-3, 2009 Tumbleweed incident. I was told by Deputy Flores that he was not terminated but instead received a suspension.

19. Unlike me, Deputy Flores was not active in trying to get collective bargaining with the Pueblo County Sheriff's Office.

20. I believed that I could not be terminated without the Sheriff providing due process by way of notice and an adequate and fair opportunity to be heard. I also believed that based upon our Department Policy that the Sheriff's Office would conduct fair and impartial investigations of any complaints and that the Sheriff's Office would try to clear my name if presented with evidence that I was falsely accused. In light of this, during my June 25, 2009 meeting, I gave Sheriff Taylor the name Lawrence Lock with the understanding that the Sheriff would investigate the matter in accordance with policy. Despite my efforts and reliance on the policy, Sheriff ignored the exculpatory material and instead elected to terminate me.

21. It was concerning that Sheriff Taylor did not follow the above departmental policy in clearing my name when given information that would discredit Mr. Reese's allegations. When Sheriff Taylor would not postpone the pre-disciplinary meeting in light of the information I gave him about Mr. Lock, it became obvious that Sheriff Taylor was going to me because of my union activities.

_____
Thomas McLallen III

STATE OF Colorado                )
                                 )
CITY and COUNTY OF DENVER        )

The foregoing Affidavit was subscribed and sworn to before me this 18th day of July, 2011.

Witness my hand and official seal.

_____
Notary Public

My commission expires: 2/6/2014