IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 10-cv-01187-RPM

THOMAS L. MCLALLEN, III,

      Plaintiff,

v.

SHERIFF KIRK M. TAYLOR, in his official and individual capacity;
UNDERSHERIFF J.R. HALL, in his official and individual capacity;
CAPTAIN LEIDE DEFUSCO, in his official and individual capacity;
INSPECTOR TOM PROUD, in his official and individual capacity; and
BUREAU CHIEF DARLENE ALCALA, in her official and individual capacity;

      Defendants.

## MEMORANDUM OPINION AND ORDER

Thomas L. McLallen, III ("McLallen") began work for the Sheriff of Pueblo County, Colorado, as a Resource Pool Detention Officer in November, 1999. He became a Detention Deputy on March 13, 2000, and was promoted to Sergeant in the Detention Bureau on May 6, 2006. These positions were in the Pueblo County Jail.

Kirk M. Taylor was elected Sheriff of Pueblo County in November, 2006, and took that office in January, 2007. McLallen was then the president of the Pueblo County Sheriff's Office Employee Association. The members of that association voted to join the Fraternal Order of Police ("FOP"), a labor organization, in June, 2007.

The membership of Lodge #7 passed a resolution to seek collective bargaining rights and made a public announcement of that plan at a press conference.

By a letter dated April 2, 2008, McLallen explained to Sheriff Taylor that Lodge #7 would

ask the Pueblo Board of County Commissioners to approve an amendment to the County Code to permit the employees of the Sheriff's Office to negotiate an agreement on compensation, benefits and working conditions and to refer the amendment to the voters.  The County had limited collective bargaining agreements with three locals of the AFSCME for some groups of its employees.

On April 3, 2008, the Sheriff and the County Attorney responded by letters to McLallen, contending that under the Colorado Constitution and state statutes, the Sheriff has sole authority to hire and set the conditions of employment for the employees of his office, including setting compensation with the approval of the County Commissioners.  Sheriff Taylor wrote that collective bargaining was fundamentally inconsistent with his view of law enforcement.

With the assistance of Michael Violette of the State Fraternal Order of Police, McLallen drafted an ordinance to grant bargaining rights to the Sheriff's deputies and presented it to the County Commissioners on July 7, 2008.  The Board rejected the proposal in a letter dated July 17, 2000, expressing legal concerns about imposing their policy and management decisions on the Sheriff.

By his letter of September 22, 2008, Sheriff Taylor set five conditions to recognizing Lodge #7 as an employees' association, including a public acknowledgment that it was not a labor union or bargaining agent and that it had no authority to negotiate pay and benefits. That letter was given out at an "All-Hands" meeting.

On February 16, 2009, McLallen testified before a committee of the Colorado General Assembly in support of a bill to mandate state-wide collective bargaining for peace officers and firefighters.  He was critical of the Pueblo Sheriff's Office in his comments.

The Sheriff and Undersheriff J.R. Hall encountered McLallen in a parking lot a few days later and the Sheriff expressed his feeling of being "blind-sided." The Sheriff attended the FBI National Academy in Quantico, Virginia, from April through June, 2009. Three incidents resulting in disciplinary action against McLallen occurred during that absence.

The first involved the restraint of a detainee who became combative while being attended by medical staff at 2:15 a.m. on April 18, 2009. McLallen joined others in the physical action, hitting his knee and receiving a head butt, during which he yelled out "mother fucker" and "cock sucker." On April 30, 2009, Lieutenant DeSalvo issued a "verbal counseling" to McLallen for using derogatory language and for not acting as a superior should by going "hand-on".

On the night of May 2-3, 2009, while off duty, McLallen was involved in a disturbance at the Tumbleweed Tavern. A second incident at that place occurred on May 12, 2009, resulting in a complaint by a federal correctional officer that he was called a "cock sucker" and that McLallen had provoked a former inmate.

McLallen was ordered to meet with Detention Bureau Captain Leide DeFusco ("DeFusco") on May 14, 2009, to explain the April 18, 2009, incident. On the next day, DeFusco wrote a memo to Bureau Chief Darlene Alcala ("Alcala"), recommending that McLallen be removed from the rank of Sergeant and as a leader and tactical officer from the STAT Team for "inexcusable behavior."

On the same day of DeFusco's meeting with McLallen, Alcala wrote to Hall recommending an Internal Affairs investigation of the May 3 incident.

Alcala met with McLallen on May 19, 2009, to have him explain the incidents. The next

day, Alcala wrote a memorandum to Undersheriff J.R. Hall, recommending a five-day suspension, a written reprimand and removal from the STAT Team.

Inspector Tom Proud conducted the investigation recommended by Alcala and included the complaint from the BOP correctional officer concerning the May 12 incident. Proud wrote a lengthy report to DeFusco and concluded that McLallen had violated several sections of the Code of Conduct.

On May 22, 2009, Undersheriff Hall wrote to McLallen, who was then on administrative leave, acknowledging Alcala's recommendation of May 20 and informing him that it would be considered after the results of the investigation into the other allegations of misconduct.

On June 2, 2009, DeFusco wrote a memo to Alcala, recommending separation of employment.

Chief Alcala met with McLallen on June 8, 2009, to review the reports concerning the Tumbleweed Tavern incidents and to receive his statements. On June 10, 2009, Chief Alcala recommended separation to Undersheriff Hall. After meeting with McLallen on June 15, 2009, Undersheriff Hall wrote to McLallen the next day, notifying him that a recommendation for termination was sent to Sheriff Taylor and to schedule a meeting with the Sheriff on June 25, 2009.

That meeting was held, as scheduled, and documented by Undersheriff Hall. Ex. A-61. The discussion concerned the two May incidents. For the first time, after a direct order from the Sheriff, McLallen disclosed the name of the former inmate involved in the May 12 incident. At the end of the meeting, the Sheriff read a separation letter, dated June 25, 2009. Ex. A-61.

In this civil action McLallen claims that the termination of his employment was motivated

4

by retaliation for his public efforts to obtain collective bargaining of employees of the Sheriff's Office, in violation of rights protected by the First Amendment to the U.S. Constitution, made applicable by the Fourteenth Amendment, for which he seeks damages under 42 U.S.C. § 1983.  It is conceded that the plaintiff's speech was on a matter of public concern and, therefore, protected speech.  It is recognized that a Sheriff, as a law enforcement officer, has a legitimate interest in maintaining a high standard of discipline within his organization.  What is in dispute is whether his reasons for exercising that disciplinary authority were substantially motivated by his disagreement with McLallen's criticisms and union activities.  This is a factual question to be decided by a jury if there is sufficient admissible evidence warranting submission to that fact finder.

The evidence is circumstantial and the question then is whether a fair inference may be drawn that the plaintiff's protected speech played a substantial role in the termination decision made by the Sheriff.  Several undisputed facts support an affirmative answer to that question.

It is significant that the April jail incident was viewed by the supervising lieutenant as minor misconduct warranting only a verbal reprimand and that no other Sheriff's deputies were criticized for their conduct.  The officers higher in command took no interest in that matter before the May incidents at the Tumbleweed Tavern, which became the subject of a criminal investigation of a reported assault and a complaint by the BOP officer.  The Proud investigation can justly be criticized as incomplete and unfair giving rise to question reliance on it by the commanding officers.  Of particular concern is the failure to interview the parolee in the May 12 matter.  His name could have been obtained from the BOP and when McLallen told it to the Sheriff, it made no difference to his decision which had been made before the meeting on June

25. What adds to the inference is that the Sheriff had already prepared the termination letter before hearing from McLallen. Indeed, McLallen's efforts to explain these occurrences fell on deaf ears as shown by the immediate reactions of DeFusco and Alcala. Additionally, there was no action taken against other employees who were in the bar and a jury may decide that termination was disproportionate discipline. These facts also may lead to a jury finding that termination would not have been the result even if the plaintiff's organizing activities had been considered, negating the Sheriff's affirmative defense.

      The necessary conclusion is that Sheriff Taylor must stand trial on the claim of a violation of the First Amendment's protection of speech.

      McLallen claims that he was denied procedural due process in violation of the Fourteenth Amendment because he was not given adequate notice and an opportunity for a hearing before his termination. Recognizing that his employment was at the will of the Sheriff, the plaintiff asserts that he had a protected property right in his expectation of continued employment because of the requirement in C.R.S. § 30-10-506. That statute reads as follows:

> Each sheriff may appoint as many deputies as the sheriff may think proper and may revoke such appointments at will; except that a sheriff shall adopt personnel policies, including policies for the review of revocation of appointments. Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff.

      The statute contains no substantive restriction on the sheriff's discretion in revoking the appointment of a deputy and does not prescribe any particular procedure for the "opportunity to be heard by the sheriff." Here the Sheriff did provide McLallen with a face to face meeting to explain his conduct. It is true, as previously noted, that the termination letter had been prepared in advance of the meeting, making the opportunity to be heard a hollow one, but the statute

does not create a property interest within the constitutional protection.

McLallen claims entitlement to damages for a violation of another statute, C.R.S. 8-2.5-101.  That statute is applicable only if the termination was based solely on the fact that McLallen appeared and testified before the legislative committee.  The fact is that termination was based on other grounds and even if those reasons were flawed and the testimony may have been a factor in the decision, it was not the only one.

Also at issue is whether defendants Undersheriff J.R. Hall, Captain Leide DeFusco, Inspector Tom Proud and Bureau Chief Darlene Alcala should also be liable for McLallen's First Amendment Claim.  Defendants argue that since only Sheriff Taylor had the authority under Colorado law and under the policies and procedure of the Sheriff's Office to terminate McLallen, Hall, DeFusco, Proud and Alcala cannot be held liable as a matter of law.

Each of these defendants did participate in and influence the Sheriff in terminating McLallen.  In the process of recommending discipline for McLallen, each provided information to the Sheriff based on disputed evidence before them.

During the time when each of the three incidents involving McLallen occurred, Undersheriff Hall was the highest in command at the Pueblo County Sheriff's Office.  Sheriff Taylor was attending 10 weeks of FBI training in Virginia from April through June, 2009.  Hall met with McLallen several times, the final time being June 16, 2009.  In this meeting, Hall informed McLallen that he would recommend McLallen's termination based on his review of the evidence.

After the April 18, 2009 incident with the detainee, the supervisor on the scene, Lieutenant DeSalvo, issued a verbal reprimand for McLallen's involvement.  DeSalvo felt that a

verbal counseling was the appropriate punishment for McLallen's use of foul language and not acting in an appropriate manner for a Sergeant. A verbal counseling was the lowest form of punishment, even though DeSalvo could have recommended a much higher punishment.

However, Captain Leide DeFusco called McLallen in for a meeting regarding the April 18th incident. Plaintiff was able to explain what happened when the other officers were unable to control the detainee. Captain DeFusco, who was not present for the incident, drafted a letter to Chief Alcala on May 15, 2009, recommending that McLallen be removed from the STAT team, as a leader and tactical officer, and that he be demoted. The reasons given were that Plaintiff, as a supervisor, involved "himself in a use of force when there is a sufficient amount of Deputies trying to control the situation. . . . The supervisor's role is to observe and offer guidance, not to engage and become part of the use of force. Lt. Debbie Purkett was standing nearby and observing, the same stance Sgt. McLallen should have taken." Defense Ex-A38. But in his deposition, DeFusco admits that Purkett went "hands-on" and was not disciplined because "she didn't yell those mean, nasty names" to the inmate. Ex-13.

Purkett wrote a memorandum to DeFusco on May 7, 2009, before DeFusco's recommendation to Alcala, that explained her recollection of the incident and how she also tried to assist in holding the detainee's feet. Ex-14. DeFusco denies that this misinformation in his report to Alcala had anything to do with the other incidents involving McLallen in the first two weeks of May. When asked in his deposition about why Defusco recommended demotion and not the lesser written reprimand or suspension of McLallen, DeFusco said the inmate incident and McLallen's lack of leadership were enough for him to recommend demoting McLallen. Ex-A9.

DeFusco's recommendation to demote McLallen for his foul language and for going "hands on" during the confrontation with the detainee, was received by Chief Alcala. The incident was then taken up by Chief Alcala. Chief Alcala met with McLallen, giving him the opportunity to explain the situation on May 19, 2009. Prior to their meeting, Alcala received the memo from Purkett contained in the report from DeFusco. Alcala knew that Purkett also went "hands-on" and was never disciplined for actions which mirrored the actions of McLallen. Ex-15. On May 20, 2009, Chief Alcala sustained the policy violations and recommended to Undersheriff Hall that the Plaintiff receive a 5 day suspension for his role in the confrontation with the detainee.

Subsequent to the inmate incident, Chief Alcala wrote to Undersheriff Hall that an internal affairs investigation should be opened regarding the first Tumbleweed Tavern incident that occurred on May 2-3, 2009. After the investigation, McLallen met with Alcala on June 8, 2009, regarding both incidents at the Tumbleweed. On June 10, 2009, Chief Alcala recommended to Undersheriff Hall that McLallen be terminated from the Pueblo County Sheriff's Office. Alcala believed that the combination of multiple reprimands and the fact she felt McLallen could not successfully move on with a different job in the department because he did not believe he did anything wrong, made it impossible to simply demote McLallen.

Undersheriff Hall assigned the investigation of McLallen to Inspector Proud. McLallen was notified that the investigation was being opened on May 22, 2009. Inspector Proud's findings are in Exhibit A54. In a 35 page memorandum to Captain Leide DeFusco, Officer Proud found 11 violations of policy and procedure, general orders and Code of Conduct for Supervisors. Many of these findings are contradicted by the depositions of witnesses. Proud

found that McLallen violated a Colorado statute by unlawfully giving alcohol to someone under the age of twenty-one, that Plaintiff engaged and was involved in an unlawful bar fight, that McLallen failed to stop Deputy Flores from engaging in improper activity; and the Plaintiff failed to report the disturbance which occurred at the Tumbleweed Tavern on May 2-3, 2009. Contradicting these findings are the findings of Officer Donald Leach who was in charge of the criminal investigation of the incident on May 2-3. In his deposition, Leach stated that during the course of his investigation, he found that McLallen did not violate any statutes. Specifically, he found that McLallen did not interfere with the investigation of the incident at the Tumbleweed on May 2-3, that McLallen did not coach Leonard Flores' responses to questions by officers at the hospital, and McLallen did not give alcohol to someone under twenty one. Leach determined that McLallen was a witness, not a suspect.

In a written report of an investigation by a Joe Muldoon on the McLallen case, Lawrence Lock, who is the ex-inmate that McLallen supposedly harassed at the Tumbleweed on May 12, stated that McLallen was "respectful to him and did not harass him." Ex-17. Further, Lock stated that he met with Inspector Proud on or about May 18th. In that interview, he told Proud that McLallen did not harass him, but it was "obvious Proud was 'singling out Tommie. . . .'" The interview lasted about 15 minutes and Proud never contacted Lock again. Sheriff Taylor says in his deposition that the Police Department did not know the name of that ex-inmate until June 25, 2009, which was the date of McLallen's termination. Ex-10.

The internal affairs findings of Proud were submitted to Defusco for his review and consideration. Defusco then made his recommendation to Alcala, which recommendation was termination. Undersheriff Hall agreed after reviewing all of the evidence and made his

recommendation for termination to Sheriff Taylor.

There are many disputed questions of fact as to the conduct of defendants Hall, DeFusco, Proud and Alcala leading to the termination of McLallen. Each of them had information that disputed the role of McLallen in the three incidents that resulted in his termination. Their failure to consider that information in their evaluations and recommendations may support an inference that they did indeed single out McLallen because they knew the Sheriff was angry about McLallen's union activity and wanted him gone. It is

ORDERED that the defendants' motion for summary judgment is denied as to the First Amendment claim, and granted as to the other claims.

Dated: February 15th, 2012

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge