IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

```
THOMAS L. McLALLEN, III,        )
                                )
          Plaintiff,            )
                                )
     vs.                        ) 1:10-cv-01187-RPM
                                )
SHERIFF KIRK M. TAYLOR,         )
UNDERSHERIFF J. R. HALL,        )
CAPTAIN LEIDE DEFUSCO,          )
INSPECTOR TOM PROUD,            )
BUREAU CHIEF DARLENE ALCALA,    )
                                )
          Defendants.           )
```
_____

TRIAL TO JURY - DAY 8
PARTIAL TRANSCRIPT OF PROCEEDINGS
_____

Proceedings held before the HONORABLE RICHARD P. MATSCH, U.S. District Judge for the District of Colorado, beginning at 9:03 a.m. on the 24th day of October, 2012, in Courtroom A, United States Courthouse, Denver, Colorado.

APPEARANCES

For the Plaintiff:      Reid Jason Elkus, Esq.
                        Donald C. Sisson, Esq.
                        Elkus Sisson & Rosenstein, P.C.
                        501 South Cherry Street, #920
                        Denver, Colorado  80246

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

```
                    APPEARANCES:   (Continued)

For the Defendants:          Andrew David Ringel, Esq.
                             Gillian Dale, Esq.
                             Hall& Evans, LLC-Denver
                             1125 - 17th Street, #600
                             Denver, Colorado   80202-2052
```

3

1                    P R O C E E D I N G S

2        (Whereupon, the following consists of a partial

3   transcript of the proceedings requested:)

4        THE COURT:  Did you want to renew your Rule 50 motion?

5        MR. RINGEL:  I do.  Thank you, Your Honor.  Your Honor,

6   at this time the defendants renew their motion under Federal

7   Rule of Civil Procedure 50 and incorporate by reference all

8   the arguments and authorities that were previously

9   articulated to the Court when the motion was made previously.

10       THE COURT:  All right.  Denied again, as previously.

11            Now, in talking about the instructions, you can

12  remain seated as long as you're on a microphone.  You don't

13  have to come up and back here to the microphone.

14            And, for reference, we'll use the page numbers,

15  upper right-hand corner, for the pages in referring to any

16  objections or comments.

17            Mr. Elkus, we'll start with you.

18       MR. ELKUS:  Thank you, Your Honor.  I know we received

19  two sets of jury instructions, one from the other day, which

20  is a smaller version, and one from, I think it was,

21  yesterday.  I don't know which one--

22       THE COURT:  No, they're the same.

23       MR. ELKUS:  Oh, they are the--

24       THE COURT:  I gave you two copies.

25       MR. ELKUS:  Oh, okay.  So--oh, I did see that.

4

```
 1          THE COURT:  Oh, well, you're talking about the original,
 2     which, you know, I just gave you those as a heads-up early
 3     on.  But, yeah, I'm sorry.
 4          MR. ELKUS:  No, no.
 5          THE COURT:  But, you know, they're incorporated in this
 6     set of 31 pages.
 7          MR. ELKUS:  So the first correction that plaintiff would
 8     have, Your Honor, would be at page 5.
 9          THE COURT:  All right.
10          MR. ELKUS:  And--are you there, Your Honor?
11          THE COURT:  Yes.
12          MR. ELKUS:  Okay.  So it says, the last paragraph, the
13     first question to be decided in this case is whether Sheriff
14     Taylor abused that authority by terminating Mr. McLallen's
15     employment because of his attempts to obtain collective
16     bargaining rights for the sheriff's employees.  We would also
17     want to include in there some language to the effect of
18     "and/or being associated with the Fraternal Order of Police,"
19     because, I think, as Your Honor indicated yesterday, that you
20     subsumed into one instruction--
21          THE COURT:  Yes.
22          MR. ELKUS:  --that issue of speech and association.  It
23     looks here as though it just talks about the speech to obtain
24     collective bargaining rights.
25          THE COURT:  I see.
```

5

```
 1        MR. ELKUS:  That's the speech.  We would also want to
 2   have something that says that, because of the attempts to
 3   obtain collective bargaining rights and/or--excuse me--to
 4   obtain collective bargaining rights for the sheriff's
 5   employees and/or his association with the Fraternal Order of
 6   Police.
 7        THE COURT:  Okay.  Any objection to that?
 8        MS. DALE:  Your Honor, I don't think that the
 9   association claim is supported by the evidence given the--
10        THE COURT:  I merged them together.
11        MS. DALE:  Okay.
12        THE COURT:  You looked at them separately.  I'm not.  I
13   think this is an appropriate correction, so give it to me
14   again, and/or his--
15        MR. ELKUS:  And/or his association with the Fraternal
16   Order of Police.
17        THE COURT:  All right.  Okay.
18        MR. ELKUS:  The other correction--I'm trying to think
19   how we could do this, Your Honor--this one is a little more
20   confused.  But it says plaintiff, Mr. McLallen, has claimed
21   that the other defendants--Undersheriff Hall, Tom Hall,
22   Alcala--also violated his First Amendment rights by their
23   actions leading to--oh, I see--leading to the recommendations
24   for termination.
25        THE COURT:  Yeah, right.
```

6

```
 1        MR. ELKUS:  Because, I guess, obviously Tom Proud did
 2   not make a recommendation for termination but--
 3        THE COURT:  That's why I said "actions leading."
 4        MR. ELKUS:  And I'm okay with that, Your Honor.
 5        THE COURT:  Okay.
 6        MR. ELKUS:  My other correction I had, Your Honor, or
 7   objection, would be page 7.
 8        THE COURT:  Okay.
 9        MR. ELKUS:  I'm looking (inaudible).
10        THE COURT:  It's the same thing, the collective
11   bargaining rights and/or?
12        MR. ELKUS:  Well, that would be one change.  But the
13   other change I had was--the other change I would have, Your
14   Honor, is the phrase that says "motivated by an intention to
15   retaliate."  We believe that, with all due respect to Your
16   Honor, that that's not the correct standard.  I believe the
17   standard is--and I think you actually indicated it in your
18   verdict form--
19        THE COURT:  I think this was a stipulated instruction,
20   wasn't it?
21        MR. ELKUS:  Actually, what we stipulated to, Your
22   Honor, or we thought we were stipulating to--
23        THE COURT:  I don't remember.
24        MR. ELKUS:  --was--actually, no, it's--the parties
25   actually didn't stipulate as to what the--I believe the
```

7

1   verdict form should be--correct me if I'm wrong, Gillian, but
2   how we looked at it, the correct element should be that the
3   plaintiff's, let's say, First Amendment speech was a
4   substantial or motivating factor for the defendants' action.
5   I think that's how it should read.
6        THE COURT:  Well, I've got that, too.
7        MR. ELKUS:  I know, but I think by adding the additional
8   language, "by an intention to retaliate", then that almost
9   seem to conflict with--well, it conflicts with the verdict
10  form, but it also conflicts with Instruction Number 6 where
11  it says, "Plaintiff Thomas McLallen was not required to
12  produce direct proof of unlawful motive, intent, or design.
13  And motive, intent, or design can violate a person's
14  constitutional right if it exists.  (Inaudible) admitted
15  directly (inaudible), if it exists, must be shown from
16  existence of other facts."  And it sounds like we're creating
17  an additional element that we have to prove almost the
18  specific intent, and I don't believe that that's the correct
19  element for this claim, Your Honor.
20       THE COURT:  All right.  What do the defendants say?  I
21  don't remember where--I thought I got this language from the
22  stipulated, but I guess I didn't.
23       MS. DALE:  I think that these ones were kind of a
24  combination of the various First Amendment instructions that
25  we submitted.

```
 1        THE COURT:  All right.
 2        MS. DALE:  And I think that--I agree that the
 3   substantial or motivating factor is the language used in
 4   other instructions.
 5        THE COURT:  Yeah.  Well, the objection is, on page 7,
 6   "motivated by an intention to retaliate."  Why don't we just
 7   say, "In his decision to terminate his employment, Sheriff
 8   Taylor retaliated"?
 9        MR. ELKUS:  Well, let me--
10        THE COURT:  Just retaliated.
11        MR. ELKUS:  I wonder if we can say, "(Inaudible) his
12   complaint of a violation of the First Amendment, the
13   plaintiff, Thomas McLallen, must prove by a preponderance of
14   the evidence that in his decision to terminate his
15   employment, Sheriff Taylor was--
16        THE COURT:  Retaliating.
17        MR. ELKUS:  --was motivated--was motivated by Mr.
18   McLallen's efforts to--"
19        THE COURT:  Well, you know, I'm looking at this in
20   combination with page 6.  Page 6 says, "Conduct was a
21   substantial motivating factor in the termination of the
22   decision."  So why don't we just say Sheriff Taylor
23   retaliated?
24        MR. SISSON:  Your Honor, may I speak?
25        THE COURT:  Yes.
```

1     MR. SISSON: Okay. Your Honor, to me--it's kind of hard
2  to express it, but I think it should be consistent with the
3  verdict form, and specifically Number 1, "Did the plaintiff
4  prove by a preponderance of the evidence that his activities
5  in attempting to obtain collective bargaining--
6     THE COURT: Okay.
7     MR. SISSON: --for the Sheriff's Department were--"
8     THE COURT: Okay, I see what you're saying.
9     MR. SISSON: Yeah.
10    THE COURT: I think that's okay.
11    MR. SISSON: And that's what I'm trying to say, Your
12 Honor.
13    THE COURT: Just use the same language as Question 1 of
14 the verdict form?
15    MR. SISSON: Yes, exactly.
16    THE COURT: Any objection to that?
17    MS. DALE: No, Your Honor.
18    THE COURT: All right, good. Okay.
19    MR. RINGEL: So, if I understand, it's going to track
20 page 6--
21    THE COURT: "To recover on his claim of violation of the
22 First Amendment, the plaintiff, Thomas McLallen, must prove
23 by a preponderance of the evidence that his activities in
24 attempting" and so forth, the language of the first question.
25    MR. RINGEL: Okay, I understand.

10

1        THE COURT:  All right.

2        MR. ELKUS:  And I believe the--obviously, other than

3   the--we're talking about that it should be speech in

4   association globally for all the verdict forms--or for all

5   the jury instructions.  And I believe that the final

6   revisions or objection that the plaintiff has, Your Honor, is

7   in regards to the verdict form.

8        THE COURT:  All right.  Well, we'll get to the verdict

9   form after I hear from the defendants.

10       MR. ELKUS:  Oh, okay.

11       THE COURT:  Ms. Dale, what objections do you have?

12       MS. DALE:  Your Honor, going back to page 5--

13       THE COURT:  Okay.

14       MS. DALE:  --and we took what was already--we remain

15  concerned with the recommendations for termination that still

16  seems to imply that Inspector Tom Proud made a recommendation

17  for termination, and in other instructions, I think, there

18  was language to the effect of a report for a recommendation--

19  distinguish between the two.

20       THE COURT:  Oh, as to Proud?

21       MS. DALE:  Correct.

22       THE COURT:  Why don't we just say their actions--instead

23  of "their", "the"--the recommendations, so it doesn't refer

24  to the--

25       SPEAKER:  (Inaudible) leading to the recommendations.

                                                                        11

 1        THE COURT:  Yeah.  All right?
 2        MR. ELKUS:  We would have no objection to that.
 3        THE COURT:  Yeah, I think that clarifies it.
 4        MS. DALE:  Thank you, Your Honor.  On page 9--
 5        THE COURT:  Okay.
 6        MS. DALE:  --first paragraph, second line, "in
 7   terminating him," that applies to all of the defendants,
 8   which all of the defendants did not terminate him.
 9        THE COURT:  Which paragraph?
10        MS. DALE:  The first paragraph in the second line.
11        THE COURT:  Okay.  Why don't we just take out "in
12   terminating him"?  So it would read, "Retaliated against
13   plaintiff, Thomas McLallen."
14        MS. DALE:  That makes sense to me, Your Honor.
15        MR. ELKUS:  No objection to that, Your Honor.
16        THE COURT:  All right.
17        MS. DALE:  And then in the second paragraph of that same
18   page it says, third line, "Increases in salary and benefits
19   including pension."  I don't believe pension was an issue.
20        THE COURT:  I think you're right.
21             Is that right?
22        MR. SISSON:  She may be, Your Honor.  I'm a little
23   confused.
24        THE COURT:  Yeah, the way I recall the testimony, he
25   withdrew some money--

12

1     MR. SISSON:  Retirement money.

2     THE COURT:  --from a--I don't know whether it was a 401K
3  or what it was, but that's not the pension as such.  Pension
4  would refer to the State pension system.

5     MR. SISSON:  I think that's technically correct.  I
6  don't know if we want to say it included retirement accounts.

7     THE COURT:  Yeah, just take it out.  You can argue it.
8  So I'm taking out "including pension."

9     MS. DALE:  And then on page 11, it looks like this is
10 actually the same as page 9.  I mean, it's slightly different
11 wording, but it seems to be the same instruction.

12    THE COURT:  Yeah.  You know, this is one where you
13 stipulated to both of these, and I don't know whether that's
14 needed.  Well, this has the calculating future, but we're not
15 going to have the jury do these calculations.  We've got
16 Pacey's testimony.  So let me just look at this again.

17    MS. DALE:  And, actually, Your Honor, page 9 also has
18 the future damages produced at present value.

19    THE COURT:  Yeah, it does.

20    MR. RINGEL:  Yeah, page 9 and page 11 (inaudible).

21    THE COURT:  Yeah, they're duplicates.

22    MR. RINGEL:  They're duplicates.  Exactly.

23    THE COURT:  We don't need 11.

24    MR. ELKUS:  No objection to that.

25    THE COURT:  All right.

13

```
 1         MR. SISSON:  Your Honor, I guess, just in light of
 2   Pacey's testimony, obviously all future damages were reduced
 3   to their net present value.  So we need--because it would be
 4   confusing to the jury, that last paragraph, I guess, on page
 5   9, "future damages must be reduced to present value."
 6         THE COURT:  Yeah, I think it is somewhat confusing.
 7         MR. RINGEL:  As long as it's just the last paragraph
 8   that's out--
 9         THE COURT:  Yeah, that--
10         MR. RINGEL:  --the third paragraph, I think, is still
11   appropriate.
12         THE COURT:  Yes, it has the present, so I'm taking out
13   the last paragraph.  So our damage instruction will be page
14   9, three paragraphs, fourth paragraph out.  Okay?
15         MS. DALE:  On page--I may just have an odd copy, but
16   page 12 an instruction starts, and then it appears page 14 is
17   the last part of that one.
18         MR. ELKUS:  Yeah, that's how mine is, too.
19         MS. DALE:  Okay.  So page 13 should be after page 14.
20         MR. ELKUS:  Yeah, that's right.
21         MS. DALE:  So the--
22         THE COURT:  Yeah, right.  They got mixed up.  So 14
23   becomes 13, 13 becomes 14.  Okay?  Good catch.
24         MS. DALE:  That was all I had, Your Honor.
25         THE COURT:  All right.
```

14

1      MR. RINGEL:  One other thing, Your Honor, and I don't
2  think it's a big deal, but I just wanted to bring it to the
3  Court's attention.  We had submitted a stipulated facts
4  instruction--
5      THE COURT:  Yeah, but--
6      MR. RINGEL:  --really basic facts.  I don't necessarily
7  think--
8      THE COURT:  They don't mean anything now, you know.
9  There's no point in dealing with a stipulation that isn't
10 significant to the instructions.
11     MR. RINGEL:  Fair enough.  Thank you.
12     THE COURT:  All right, now verdict forms.  Mr. Elkus?
13     MR. ELKUS:  Thank you, Your Honor.  Now, our issue, Your
14 Honor, would be, after you read Number 1 where it says, "You
15 answer no if you decide this case for the defendants, and the
16 presiding juror will date and sign the verdict form," and I
17 don't believe that that's accurate, Your Honor.
18     THE COURT:  Why?
19     MR. ELKUS:  And I don't agree with you.  I think where
20 there's a limited to no chance that they will not find in
21 favor--let's say that they find that Sheriff Taylor didn't do
22 anything wrong, that these other defendants did--and that may
23 not happen, but it's certainly something that could happen.
24 Each one of these defendants were on trial individually and
25 separately.  And let's say hypothetically they find that--

15

```
 1          THE COURT:  But they didn't terminate his employment.
 2          MR. ELKUS:  No, but they certainly made the
 3   recommendations that lead to his termination.  And isn't that
 4   part of the violation?
 5          THE COURT:  No.
 6          MR. ELKUS:  Okay.
 7          THE COURT:  I don't agree.  I think there has to be
 8   termination in retaliation or there's no case.
 9          MR. ELKUS:  So you're saying that there needs to be that
10   adverse employment action?
11          THE COURT:  Yes, termination is the adverse employment
12   action, not any lesser recommendations or--that's my view,
13   and I'm going to go with it.
14          MR. ELKUS:  And, with all due respect for Your Honor, I
15   understand your view.  Obviously we would think that by
16   leading to--putting him in a position where he could
17   terminate we believe is subject to retaliation.
18          THE COURT:  That's a little too nuanced for the law, I
19   think.
20          MR. ELKUS:  But, other than that, Your Honor, that would
21   be our objection to the verdict form, other than what we've
22   argued regarding punitive damages that we made previously.
23          THE COURT:  Right, of course.  You know, I don't have a
24   punitive damages instructions.  You don't need to tender it,
25   because I've dismissed that claim.
```

16

1        MR. ELKUS: Absolutely.

2        THE COURT: All right, defendant.

3        MS. DALE: We have no comments on that jury verdict

4   form.

5        THE COURT: All right. So we'll make those corrections.

6        (Whereupon, the requested portion of the proceedings was

7   concluded.)

8

9

10

11

12                    TRANSCRIBER'S CERTIFICATE

13        I hereby certify that the foregoing has been

14   transcribed by me to the best of my ability, and constitutes

15   a true and accurate transcript of the mechanically recorded

16   proceedings in the above matter.

17        Dated at Aurora, Colorado, this 1st day of January,

18   2013.

19

20                              /s/ Sylvia Besel

21                              Sylvia Besel

22                              Federal Reporting Service, Inc.

23                              17454 East Asbury Place

24                              Aurora, Colorado  80013

25                              (303) 751-2777